```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

17 Outlets, LLC

   v.

Healthy Food Corporation,
d/b/a Forzurt, and Tai H. Pham    Civil No. 15-cv-101-JD
                                                  Opinion No. 2016 DNH 063

   v.

ThurKen III, LLC and
Richard E. Landry, Jr.


O R D E R


17 Outlets, LLC brought suit against Healthy Food Corporation, d/b/a Frozurt, ("HFC") and Tai H. Pham after HFC failed to pay rent due under a lease for commercial space in Merrimack, New Hampshire, that is subject to a guaranty signed by Pham.  HFC brought a third-party complaint against ThurKen III, LLC and ThurKen's manager, Richard E. Landry, Jr., arising from the original lease agreement with ThurKen.  17 Outlets moves for summary judgment on its claims against HFC and Pham. HFC and Pham do not dispute that HFC failed to pay rent but object to the motion for summary judgment on the claim against Pham based on the guaranty, which they claim is unenforceable.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case."  Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).  Reasonable inferences are taken in the light most favorable to the nonmoving party, but unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment.  Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted).

Background

ThurKen purchased a four unit strip mall on June 1, 2012. Prior to the purchase, ThurKen arranged to lease all four units. HFC and Pham believe that ThurKen was under pressure to have the four units in the business center leased by May 31, 2012, in order to close on the purchase of the property.  On May 23, 2012, Orange Leaf, a frozen yogurt business, decided not to lease the space in the mall, as originally planned.

Richard Landry, as manager for ThurKen, then contacted Tram Dang about HFC leasing the space because she had expressed interest in leasing space for a Frozurt store.  On May 31, 2012, Tuan Dang signed a lease for commercial space in the mall, on behalf of HFC d/b/a Frozurt, as president and treasurer of HFC.[1]  ThurKen was the lessor, and Landry signed the lease as manager of ThurKen.  Under the terms of the lease, HFC was required to pay monthly rent and other amounts for a lease period of fifteen years.

On the same day, Pham signed an agreement titled "Unlimited Guaranty."[2]  The guaranty stated that it was provided "[t]o induce Landlord to enter into a certain lease agreement of even or near date with **Tram Dang dba Frozurt** ('the 'Lessee'), for real property located in Merrimack, New Hampshire."  Pham "absolutely and unconditionally guarantee[d] the full and punctual payment to Landlord of all sums which may be presently due and owing and of all sums which shall now and in the future become due and owing to Landlord from the Lessee, under the Lease."  Pham also agreed to other provisions in the guaranty.

---

[1] Tuan and Tram Dang are brother and sister.

[2] Pham signed the guaranty at his home on Long Island, not as part of the closing on the lease.  Pham states that he never saw the lease and signed the guaranty because of Vietnamese family duty.

3

In support of its motion for summary judgment, 17 Outlets submitted a copy of the "Business Entity Summary" for HFC filed with the Corporations Division of the Secretary of State's Office for the Commonwealth of Massachusetts.  The Summary lists Tram Dang as president, treasurer, secretary, and director of HFC.  Although the Summary is undated, counsel for 17 Outlets represents that the document appeared on the Secretary of State's website on November 16, 2015.  In response, HFC and Pham submitted a copy of a "Statement of Change of Supplemental Information" for HFC from the Secretary of State's Office, that is dated May 3, 2012, that lists Tuan Dang as HFC's president, treasurer, secretary, and director.

17 Outlets purchased the property from ThurKen on April 17, 2014, pursuant to a document titled "Assignment and Assumption of Lease Agreements."  After the purchase, HFC failed to pay rent beginning in May of 2014.  17 Outlets served a demand for rent and an eviction notice on HFC on October 3, 2014.  HFC has vacated the leased space.

Part II, Section 17(c)(i) states that in the event of default, the stated fixed and additional rents become due and are required to be paid.  Section 17(c)(iii) imposes as liquidated damages the deficiency between the amount of rent owed and the amount the landlord received by re-letting the

space.  The lease also provides for costs and attorneys' fees to the prevailing party in proceedings under the lease.  Part II, Section 38(f).

## Discussion

17 Outlets brings a claim of breach of contract against HFC and a claim of breach of guaranty against Pham.  HFC does not contest the breach of contract claim against it.  Pham contends that he did not breach the guaranty because it is unenforceable.

### A. Breach of Contract

HFC does not object to summary judgment on the breach of contract claim against it and does not contest that it is liable to 17 Outlets under the terms of the lease.  Therefore, 17 Outlets is entitled to summary judgment on the breach of contract claim against HFC.

### B. Breach of Guaranty

17 Outlets moves for summary judgment on the breach of guaranty claim against Pham.  17 Outlets contends that HFC has defaulted under the lease, making Pham liable for the amounts due pursuant to the guaranty.  Pham argues that he is not liable because the guaranty is voidable due to a mutual mistake, that no guaranty agreement was reached, and that under a strict

construction of the guaranty he did not guarantee HFC's obligations.[3]

A guaranty agreement is governed by contract law. See Fleet Bank-NH v. Christy's Table, Inc., 141 N.H. 285, 289 (1996). Therefore, "[a] guarantor's exposure to liability depends upon the terms of the contract." BankEast v. Michalenoick, 138 N.H. 367, 369 (1994).

"The interpretation of a contract is a question of law to be determined by focusing on the language of the written contract, as it reflects the intent of the parties, . . . [and] [t]his intent is determined from the agreement taken as a whole." Id.  The obligation of a guarantor depends on what "the fair import of the language used imposed on [the guarantor]." Manchester Bank v. Indus. Dev. Auth., 119 N.H. 14, 16 (1979) (internal quotation marks omitted).  A personal guaranty that is "clear and explicit" and shows an intent by the guarantor to be liable in the event of a default by the obligor is enforceable as a guaranty. Middileton Bldg. Supply, Inc. v. Gidge, 2000 WL 33915975, at *3 (N.H. Superior Ct. June 5, 2000) (quoting 38 Am.Jur.2d, Guaranty, § 5).

---

[3] Pham also asks that the terms of the guaranty be strictly construed.  It is not necessary, for purposes of summary judgment, to decide whether that standard applies in this case.

1.  <u>Mutual Mistake</u>

Pham contends that the guaranty agreement is voidable because "Tram Dang d/b/a Frozurt" instead of HFC is named as the lessee in the agreement. Pham further contends that ThurKen mistakenly identified Tram Dang d/b/a Frozurt as the lessee because of its haste to complete the lease, which resulted in having the guaranty signed before the lease. Pham argues that the name is not a mere typographical error and, instead, is a mutual mistake that makes the guaranty voidable.

"'Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party.'" <u>Gray v. First NH Banks</u>, 138 N.H. 279, 284 (1994) (quoting <u>Restatement (Second) of Contracts</u> § 152(1) (1979)). "[T]here must be a causal connection between the alleged mistake and some detrimental action by the party seeking relief." <u>Petition of Eskeland</u>, 166 N.H. 554, 562-63 (2014). On the other hand, if the party seeking to void the agreement was aware of the issue before the contract was signed, no mistake occurred and the agreement is not voidable. <u>Gray</u>, 138 N.H. at 284.

Here, there is no dispute that Tram Dang was mistakenly identified as the lessee in the guaranty agreement. It appears

7

that at the time the lease and guaranty agreement were signed, May 31, 2012, Tuan Dang was the president, treasurer, secretary, and director of HFC and signed the lease on behalf of HFC. The guaranty agreement, however, identifies Tram Dang, d/b/a Frozurt, as the lessee whose obligations Pham agreed to guarantee. The guaranty does not mention HFC.

Pham argues that because Tram Dang, rather than HFC, was identified as the lessor in the guaranty agreement, he understood that he was guaranteeing her obligations, personally, not the obligations of HFC. Pham states in his affidavit that Tram Dang's mother, Huong Pham, is the daughter of his uncle, making Huong Pham and Tai Pham cousins; that Huong asked Pham to help Tram; and that he agreed because of the family connection.

Pham did not see the lease before signing the guaranty. He did not know that the guaranty referred to HFC's lease. Pham states that he would not have signed the guaranty on behalf of a corporation and intended only to guaranty the obligations of Tram Dang, personally.

17 Outlets contends that because HFC is the lessee named in the lease, Pham's interpretation of who was the lessee is unreasonable. 17 Outlets urges the court to consider the guaranty in the context of the transaction as a whole. Based on the lease's definition of HFC as the lessee, 17 Outlets argues

that HFC, not Tram Dang, should be interpreted to be the lessee for purposes of the guaranty.  17 Outlets asserts that Pham guaranteed the obligations of HFC under the lease.

The circumstances taken as a whole show that the guaranty could be interpreted as Pham contends.  Pham did not see the lease or know of its terms before he signed the guaranty.  The guaranty identifies Tram Dang, not HFC, as the lessee.  HFC is not mentioned in the guaranty agreement.  As a result, based on the summary judgment record, Pham reasonably could have interpreted the guaranty agreement to require him to guaranty the obligations of Tram Dang personally, as lessee, not the obligations of HFC.

Therefore, based on the summary judgment record, Pham has shown a material factual dispute about whether the guaranty agreement is voidable due to mutual mistake.  For that reason, 17 Outlets is not entitled to summary judgment on its claim in Count II of breach of the guaranty.

2. Meeting of the Minds

Pham also contends that, based on a similar theory, no agreement exists because the parties to the guaranty did not reach a meeting of the minds as to whose obligations were guaranteed.  "For a contract to be valid, there must be a meeting of the minds on all essential terms of the contract,

9

meaning that the parties must have assented to the same contract terms." Chase Home for Children v. N.H. Div. for Children, Youth & Famlies, 162 N.H. 720, 727 (2011).  Based on the summary judgment record, 17 Outlets has not shown that Pham intended to be liable for the obligations of HFC.

Therefore, in addition to the question of mutual mistake, an issue of whether there was a meeting of the minds in forming the guaranty agreement precludes summary judgment.

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 16) is granted as to Count I, breach of contract by HFC, and is denied as to Count II, breach of guaranty by Tai Pham.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

March 23, 2016

cc:   James F. Laboe, Esq.
      Christopher P. Mulligan, Esq.
      David K. Pinsonneault, Esq.
      Lisa Snow Wade, Esq.