```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

17 Outlets, LLC

   v.

Healthy Food Corporation,
d/b/a Frozurt, and Tai H. Pham          Civil No. 15-cv-101-JD
                                        Opinion No. 2016 DNH 072
   v.

ThurKen III, LLC and
Richard E. Landry, Jr.


O R D E R

17 Outlets, LLC brought suit against Healthy Food Corporation, d/b/a Frozurt, ("HFC") and Tai H. Pham after HFC failed to pay rent due under a lease for commercial space in Merrimack, New Hampshire, that is subject to a guaranty signed by Pham.  HFC brought a third-party complaint against ThurKen III, LLC and ThurKen's manager, Richard E. Landry, Jr., arising from the original lease agreement with ThurKen.  ThurKen and Landry move to dismiss the claims against them.

In response to the motion to dismiss, HFC has voluntarily dismissed its claims for breach of contract and promissory estoppel, Counts I and III of the Third Party Complaint.  HFC objects to the motion to dismiss the claim against ThurKen and Landry for fraudulent misrepresentation, Count II.

Standard of Review

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court assumes the truth of the properly pleaded facts and takes all reasonable inferences from the facts that support the plaintiff's claims.  Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 104 (1st Cir. 2015).  Conclusory statements in the complaint that merely provide the elements of a claim or a legal standard are not credited for purposes of a motion under Rule 12(b)(6).  Lemelson v. U.S. Bank Nat'l Assn., 721 F.3d 18, 21 (1st Cir. 2013).  Based on the properly pleaded facts, the court determines whether the plaintiff has stated "a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Background

Beginning in October of 2011, HFC was in the business of selling frozen yogurt products at retail outlets.  In February of 2012, HFC contacted Dustin Burke, Jr., president of American Commercial Real Estate, LLC, about leasing a retail location for its frozen yogurt business in Westford, Massachusetts.  Burke responded that the Westford location was not available.

Burke contacted HFC in April of 2012 about leasing space at a proposed strip mall that would be built by ThurKen in

Merrimack, New Hampshire.  The financing for the mall required ThurKen to have signed leases for all four spaces in the mall.  By early April, ThurKen had signed leases with Starbucks, Qdoba Mexican Grill, and Digital Credit Union.

On April 18, 2012, Burke, on behalf of ThurKen, sent a letter of intent to HFC to rent space at the mall.  The letter proposed a "triple net lease" with an initial term of fifteen years, base yearly rent of $80,000 for the first five years, and other charges.  HFC responded that it could not afford the space under the terms of the lease, particularly the fifteen year term.  Either Burke or Landry on behalf of ThurKen told HFC that the bank required the fifteen year lease term.  Landry also told HFC that if HFC could not pay the rent, the space easily could be leased to other tenants.

HFC signed the lease on June 1, 2012.  HFC agreed to the lease terms "based on Landry's assurances that meant the most it would lose if it defaulted on the lease would be the cost to fit up the space to conduct its frozen yogurt business."  ThurKen bought the property to build the mall on June 1, 2012.

ThurKen sold the mall to 17 Outlets on April 17, 2014.  In October of 2014, 17 Outlets served HFC with an eviction notice for failure to pay rent.  17 Outlets also brought this action against HFC to recover damages for breach of the lease.

Discussion

In the fraud claim, HFC alleges that ThurKen and Landry falsely represented to it that the fifteen-year lease term was required to obtain bank financing and that HFC could terminate the lease at any time "without any further adverse economic consequence." HFC asserts that those representations were false and that it relied on those representations in signing the lease, which has resulted in the action by 17 Outlets seeking damages from HFC. ThurKen and Landry move to dismiss the fraud claim on the ground that the alleged misrepresentations are contrary to the terms of the lease, making any reliance unreasonable.

A. Fraud

A claim for fraud requires proof that the defendant intentionally or with conscious indifference made a misrepresentation to induce the plaintiff to act or refrain from acting. Tessier v. Rockefeller, 162 N.H. 324, 331-32 (2011). The plaintiff must also prove that its reliance on the misrepresentation was justifiable. Id. The standard for justifiable reliance is subjective, "'based on the plaintiff's own capacity and knowledge.'" Trefethen v. Liberty Mut. Group, Inc., 2013 WL 2403314, at *7 (D.N.H. May 31, 2013) (quoting Smith v. Pope, 103 N.H. 555, 559 (1961)).

ThurKen and Landry contend that any reliance by HFC on the alleged misrepresentations was not justified because the lease contradicted any such expectations.[1] ThurKen and Landry rely on the integration clause in the lease that provides the lease constituted the parties' entire agreement which could not be changed except in writing signed by the party against whom enforcement is sought.

The alleged misrepresentation that the lease term of fifteen years was required by the bank apparently was made to induce HFC to sign the lease without negotiating the length of the lease term. HFC, allegedly, relied on that misrepresentation to agree to the fifteen-year term, accepting the representation that no shorter term was available. ThurKen and Landry have not explained how the integration clause precludes reliance on Landry's representation about the lease term.[2]

---

[1] In the motion to dismiss, ThurKen and Landry challenge only whether HFC's reliance on the alleged misrepresentations was justifiable in light of the lease and do not argue that the alleged misrepresentations were not material to inducing HFC to sign the lease agreement. See Tessier, 162 N.H. at 333-34. Therefore, the court does not consider the materiality of the representation for purposes of the motion to dismiss.

[2] In addition, under New Hampshire law, neither a general integration clause nor disclaimers in an agreement are necessarily sufficient to bar a fraud-in-the-inducement claim. See Van Der Stok v. Van Voorhees, 151 N.H. 679, 682 (2005).

Thurken and Landry also do not explain how the integration clause precludes justifiable reliance on the alleged misrepresentation that failure to pay rent would not cause adverse consequences.  Although not discussed by ThurKen or Landry, the lease does provide consequences for default at Part II, Section 17.  That section, however, recognizes the landlord's duty to mitigate damages and reduces liquidated damages by the rents "collected on account of re-letting of the Premises for each month of the period which would otherwise have constituted the remainder of the then-current term."  The default provision, therefore, does not necessarily contradict the alleged misrepresentation that if HFC could not pay the rent the space easily could be rented to another tenant to avoid harm to HFC.

ThurKen and Landry have not shown that the fraud claim must be dismissed for lack of justifiable reliance on the alleged misrepresentations.

B.   Application of RSA Chapter 304-C

To the extent Landry asserts immunity from liability for the fraud claim under RSA chapter 304-C:23 and 25, that defense lacks merit.  RSA 304-C:25 provides that New Hampshire law governs limited liability companies and the liability of a limited liability member or manager.

6

Under RSA 304-C:23,I(a), a limited liability corporation is solely responsible for its debts, obligations, and liabilities. See Chao-Cheng Teng v. Bellemore, 2013 WL 3322340, at *5 (D.N.H. July 1, 2013). RSA 304-C:23, I(b) provides that "[n]o member or manager of a limited liability company shall be obligated personally for any such debt, obligation, or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." While a manager of a limited liability company ("LLC") is not liable for the torts or contractual obligations of the LLC, a member or manager is liable when he "commits or participates in the commission of a tort, whether or not he acts on behalf of his LLC." Mbahaba v. Morgan, 163 N.H. 561, 565 (2012). "Therefore, an LLC member is liable for torts he or she personally commits because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC." Id. (internal quotation omitted).

If Landry intentionally, or with conscious indifference, made material misrepresentations to HFC to induce HFC to sign the lease and HFC justifiably relied on those misrepresentations to its detriment, Landry, personally, committed the tort of fraud. In that event, RSA 304-C:23 would not apply to shield Landry from liability.

7

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion to dismiss (document no. 27) is moot as to Counts I and III and is otherwise denied.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

March 30, 2016

cc: James F. Laboe, Esq.
    Christopher P. Mulligan, Esq.
    David K. Pinsonneault, Esq.
    Lisa Snow Wade, Esq.