UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


17 Outlets, LLC

   v.                                               Civil No. 15-cv-101-JD
                                                    Opinion No. 2016 DNH 167

Healthy Food Corporation,
d/b/a Frozurt, and Tai H. Pham

   v.

ThurKen III, LLC and
Richard E. Landry, Jr.

O R D E R

17 Outlets, LLC brought suit against Healthy Food Corporation, d/b/a Frozurt, ("HFC") and Tai H. Pham after HFC failed to pay rent due under a lease for commercial space in Merrimack, New Hampshire. In its claim against Pham, 17 Outlets sought to enforce a guaranty signed by Pham.[1] Pham moves for summary judgment, and 17 Outlets objects.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party

---

[1] HFC also brought a third-party complaint against ThurKen III, LLC and ThurKen's manager, Richard E. Landry, Jr.

and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). Although the facts and reasonable inferences are taken in the light most favorable to the nonmoving party, unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

## Background

The claims in this case arose from events that began when ThurKen III, LLC (or another related entity) made arrangements during the spring of 2012 to buy land to build a strip mall in Merrimack, New Hampshire.[2] The strip mall was to contain four units leased to retail enterprises. On May 23, 2012, Orange

---

[2] ThurKen III and Thurloe Kensington Corporation appear to be related entities. It is not clear which entity began the strip mall undertaking.

Leaf, a frozen yogurt shop and one of the four lessees, decided not to lease a unit in the mall.

Through agents, Thurloe Kensington Corporation contacted Tram Dang about leasing the vacant unit for her frozen yogurt business and sent Dang a letter of intent. A personal guaranty was required for the lease. Pham signed a guaranty agreement on May 31, 2012, before the lease was signed.

The "Unlimited Guaranty," which Pham signed, states that the guaranty was "[t]o induce Landlord [Thurken III LLC] to enter into a certain lease agreement of even or near date with **Tram Dang dba Frozurt,** ('the Lessee'), for real property located in Merrimack, New Hampshire (the 'Lease')." Pham "absolutely and unconditionally guarantee[d] the full and punctual payment to Landlord of all sums which may be presently due and owing and of all sums which shall now and in the future become due and owing to Landlord from the Lessee, under the Lease."

Pham signed the guaranty at his home on Long Island. He did not see the lease or attend the closing on the lease the next day when Tuan Dang signed the lease on behalf of HFC. Pham signed the guaranty because of his family relationship to Tram Dang's mother, who is his cousin, as a matter of Vietnamese tradition and duty. He had no information about the operation of Tram Dang's business and did not know the business was incorporated.

The lease, which was signed the day after Pham signed the guaranty agreement, identified HFC as the tenant and ThurKen III as the landlord. Tuan Dang, the president of HFC, signed the lease on behalf of HFC, and Richard E. Landry signed the lease on behalf of ThurKen III. Tram Dang was not a lessee named in the lease and did not sign the lease.

HFC moved into the strip mall unit and operated the Frozurt business there. By spring of 2014, HFC was unable to continue to make the payments required under the lease. 17 Outlets served an eviction notice on HFC, which vacated the strip mall unit sometime after October 3, 2014. When HFC did not pay the rent due under the lease, 17 Outlets demanded the amount due from Pham pursuant to the guaranty agreement. Pham denied that he had any obligations under the guaranty agreement to pay what HFC owed under the lease.

17 Outlets brings a claim that Pham breached his personal guaranty promised in the guaranty agreement. It previously moved for summary judgment in its favor on its breach of guaranty claim. The court concluded, however, that material factual disputes existed as to whether the guaranty agreement was voidable because of a mutual mistake as to the identity of the lessee and whether the parties entered an agreement at all because of a lack of meeting of the minds. As a result, the court denied 17 Outlets's motion for summary judgment.

                              Discussion

     Pham moves for summary judgment on the breach of guaranty claim against him, arguing that 17 Outlets cannot prove the claim because the guaranty is void and unenforceable as to HFC's lease obligations.  In support, Pham refers to his arguments made in objecting to 17 Outlets's motion for summary judgment and focuses on his argument that the guaranty agreement was void because there was no meeting of the minds.  17 Outlets objects, arguing that Pham and ThurKen III agreed that Pham would guaranty Tram Dang's obligations under the lease which formed an enforceable agreement, that then the guaranty could be modified without Pham's consent, that Pham waived all suretyship defenses, that the change in the identity of the lessee was not material, and that the issue of intent cannot be resolved on summary judgment.

I.   Meeting of the Minds

      "For a contract to be valid, there must be a meeting of the minds on all essential terms of the contract, meaning that the parties must have assented to the same contract terms." Chase Home for Children v. N.H. Div. for Children, Youth & Famlies, 162 N.H. 720, 727 (2011).  "The formation of a guaranty contract, like any other contract, is governed by the principles

                                 5

of mutual assent, adequate consideration, definiteness, and meeting of the minds." Middileton Bldg. Supply, Inc. v. Gidge, 2000 WL 33915975, at *2 (N.H. Super. Ct. June 5, 2000) (internal quotation marks omitted). The identity of the person or entity whose obligations are being guaranteed, which is the subject matter of the agreement, is a material term of the guaranty agreement. See, e.g., In re Blonder, 2015 WL 5773230, at *7 (Bankr. N.D. Ga. Sept. 28, 2015); Elderberry of Weber City, LLC v. Living Ctrs.-Southeast, Inc., 958 F. Supp. 2d 623, 628 (W.D. Va. 2013); Lerman v. Rock City Bar & Grille, Inc., 2010 WL 2044865, at *4-*5 (N.D. Ohio May 21, 2010); Provident Bank v. Taylor Creek Enters., LLC, 2010 WL 298300, at *3 (N.D. Fla. Jan. 19, 2010).

In the agreement, Pham agreed to guaranty the obligations of Tram Dang as the lessee of the strip mall unit under a lease with ThurKen III. The guaranty agreement identifies Tram Dang as the lessee and ThurKen III as the landlord but does not mention HFC. Tram Dang, however, was not the lessee when the guaranty was signed and never became the lessee. Therefore, Tram Dang did not have and never incurred any lease obligations to ThurKen III for Pham to guarantee. Instead, the lease, signed the next day by Tuan Dang, identified HFC as the tenant, and HFC incurred the obligations under the lease.

6

On its face, the guaranty agreement does not cover the lease obligations incurred by HFC.  17 Outlets provides no evidence that despite the plain terms of the guaranty agreement Pham and ThurKen III understood that HFC would be the lessee or that Tram Dang and HFC were one and the same thing.  Instead, it appears to be undisputed that Pham did not agree to guaranty the obligations of HFC when he signed the guaranty agreement.  Therefore, there was no meeting of the minds at the inception of the guaranty agreement that Pham would guaranty the obligations of HFC under the lease.  Without more, Pham is not obligated under the guaranty agreement to cover HFC's obligations.

II.   Guaranty Agreement as to Tram Dang

Taking a different route to save its claim against Pham, 17 Outlets argues that a guaranty agreement was formed when Pham agreed to guaranty the lease obligations of Tram Dang to ThurKen III.  In support, it contends that Pham and ThurKen agreed that Tram Dang would be the lessee and, therefore, a meeting of the minds existed based on those terms.  Then, 17 Outlets asserts, under a provision in the guaranty agreement, Tram Dang and Thurken III were allowed to modify their relationship by changing the lessee to HFC without notice to Pham.  17 Outlets also asserts that a waiver provision precludes all defenses to the guaranty.  Pham responds that no meeting of the minds

occurred so that the cited provisions of the guaranty agreement are void.

The interpretation of a written contract is ultimately a legal question for the court. Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010). The court gives "the language used by the parties its reasonable meaning, considering the circumstances and context in which the agreement was negotiated, when reading the document as a whole." Signal Aviation Servs., Inc. v. City of Lebanon, --- A.3d ---, 2016 WL 3532500, at *2 (N.H. June 28, 2016) (internal quotation marks omitted).

The guaranty agreement identifies Tram Dang as the lessee and identifies ThurKen III as the landlord. Pham agreed to guaranty Tram Dang's obligations under a lease with ThurKen III. Therefore, an agreement was created that Pham would guarantee Tram Dang's obligations under a lease with ThurKen III.

A. Modification Provision in the Guaranty

Based on Pham's agreement to guaranty Tram Dang's obligations, 17 Outlets contends that Pham now is required to cover the obligations of HFC because a modification provision in the guaranty agreement allowed Tram Dang and ThurKen III to change the lessee to HFC without notifying Pham. 17 Outlets relies on the following provision in the guaranty:

> Guarantor also agrees: (1) that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefore, nor by any agreement or arrangements whatsoever with the Lessee or anyone else, all of which may be done without notice to or consent by the Guarantor.[3]

17 Outlets contends that Tram Dang and ThurKen III modified their landlord tenant relationship, referred to in the guaranty agreement, with the lease that named HFC as the tenant. The result, according to 17 Outlets, is that Pham is required to guaranty HFC's lease obligations.

The guaranty agreement, however, did not establish a landlord tenant relationship between Tram Dang and ThurKen III. No such relationship existed when the guaranty agreement was signed, and Tram Dang never became the lessee, so that no relationship between Tram Dang and ThurKen III was ever formed. As a result, there was no relationship for Tram Dang and ThurKen III to modify with the lease.

---

[3] 17 Outlets cites "DN 29-11 at 5" as the part of the guaranty agreement with the quoted provision. DN 29 is HFC's objection to 17 Outlets's motion for summary judgment and "29-11" is the affidavit of Tai H. Pham that was submitted in support of the defendants' objection to 17 Outlets's motion for summary judgment. The guaranty agreement was submitted as an exhibit to 17 Outlets's motion for summary judgment, document number 16, exhibit 4, and was also submitted as Exhibit B to the complaint, document number 1, exhibit 2. The court has referred to those copies of the agreement.

In addition, Tram Dang was not a party to the lease. The lease was signed by Tuan Dang, on behalf of HFC, and Richard Landry, on behalf of ThurKen III. Therefore, Tram Dang did not agree to the lease and, therefore, did not agree to change the lessee named in the guaranty agreement by the terms of the lease.[4]

The cases cited by 17 Outlets do not support their theory of the application of the modification provision here. In WRS Inc. v. Plaza Entm't, Inc., 285 F. App'x 872 (3d Cir. 2008), the surety guaranteed Plaza's debts to WRS and the agreement included a provision that WRS would have "the unrestricted right to renew, extend, modify, and/or compromise any indebtedness and to accept, substitute, surrender or otherwise deal with any collateral security or other guaranties, without notice to the undersigned and without affecting the obligation of the undersigned hereunder." Id. at 873. After the surety contract was signed and in effect, WRS and Plaza entered into a services agreement through which WRS performed debt collection and accounting services for Plaza and Plaza's obligations were guaranteed by two other guarantors.

---

[4] The court does not construe or assess the enforceability of the modification provision in the guaranty agreement but instead assumes the viability of the interpretation 17 Outlets provides.

The business arrangements failed, and WRS brought suit. The surety argued that the services agreement materially modified the arrangement between WRS and Plaza, which increased the surety's risk and rendered the surety agreement inoperable. Id. at 875. The court agreed with WRS that the surety had consented to the modification of the relationship between WRS and Plaza through the quoted provision in the surety agreement. Id. at 876.

Importantly, in WRS, Plaza, whose obligations were the subject of the surety agreement, agreed to the services agreement with WRS. Therefore, WRS and Plaza had a relationship that was the subject of the surety agreement and then mutually agreed to modify their relationship. There was no third party involved. The issue in that case was whether events subsequent to the surety agreement so changed the surety's obligation as to render the agreement inoperable.[5]

---

[5] Similarly, in Black v. O'Haver, 567 F.2d 361, 369-70 (10th Cir. 1977), the O'Havers guaranteed payment under a Building Loan Agreement that was subsequently modified to include fees. The court found that the modification of the guaranty was covered by the provision in the agreement consenting to such modifications and was not "so far-reaching as to transform its essence." Id. at 370. There was no issue about switching the entity who was the subject matter of the guaranty.

In Chicago Exhibitors Corp. v. Jeepers! Of Ill., Inc., 876 N.E. 2d 129, 137 (Ill. App. Ct. 2007), individuals executed a personal guarantee for obligations under a lease owed by certain tenants. The guarantors argued that their liability was discharged when the tenant assigned the lease obligations to

Here, Pham agreed to guaranty the lease obligations of Tram Dang, to be incurred under a lease with ThurKen III.  Tram Dang, however, did not enter the lease with ThurKen III and did not have a lease relationship with ThurKen III.  As a result, the lease did not alter Tram Dang's relationship with ThurKen III because there was no relationship to alter and because Tram Dang was not a party to the lease.  Therefore, the identify of the lessee, for purposes of the guaranty agreement, was not changed by the lease.

### B. Suretyship Defenses

17 Outlets also contends that Pham waived defenses against the guaranty based on a change of lessee from Tram Dang to HFC because he waived all defenses to the guaranty agreement, including suretyship defenses.  The cited provision states: "Guarantor waives: notice of . . .; and any and all defenses, including without limitations, any and all defenses which the Lessee or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; . . . ."  Pham responds that he is not raising defenses

---

successor tenants over whom the guarantors had no control.  The court found that the guarantors, however, had expressly agreed to guaranty the obligations of the assignee of the lease and to allow the landlord to modify the lease.  Id. at 138.  In this case, however, no such specific agreements were made.

12

but instead asserts that no agreement to guaranty HFC's obligations existed.

As is explained above, Pham agreed to guaranty Tram Dang's obligations under the lease not HFC's obligations. Tram Dang never has had any obligations under the lease. The guaranty agreement does not require Pham to guaranty HFC's obligations. In the absence of any agreement that Pham guaranteed HFC's obligations, no defenses are needed to avoid 17 Outlets's claim against Pham. Therefore, the waiver provision has no effect here.

### C. Material Change

17 Outlets contends that the substitution of HFC for Tram Dang as lessee did not materially change the relationship between Pham and ThurKen III so that the substitution did not release his obligations as guarantor. The cases 17 Outlets cites in support make clear that while "mere formalistic changes" would not affect the obligations of a surety, "changes in form of the entity whose debts are guaranteed" that have an adverse impact on the degree of risk are material. State of New York v. Int'l Fidelity Ins. Co., 547 N.Y.S. 2d 466, 468-69 (N.Y. App. Div. 1989); see also Fairview Block & Supply Corp. v. Miscioine, Inc., 563 N.Y.S. 2d 375, 376 (N.Y. App. Div. 1990).

Here, Pham agreed to guaranty the lease obligations of Tram Dang individually, not HFC. HFC was not substituted as lessee for Tram Dang because Tram Dang never was the lessee. In addition, the record shows that Pham guaranteed Tram Dang's obligations because of their family relationship and his sense of family duty. Pham states in his affidavit that he did not know that HFC existed and would not have guaranteed the obligations of HFC. Indeed, Pham did not guarantee the obligations of HFC.

17 Outlets has not shown a factual dispute that Pham should be deemed to have guaranteed HFC's obligations under the lease in the circumstances of this case.

D. <u>Intent</u>

17 Outlets argues that summary judgment is not appropriate because Pham's intentions in signing the guaranty raise material factual issues. The meaning of the guaranty agreement is not in dispute: Pham agreed to guaranty the obligations of "Tram Dang dba Frozurt" as lessee of the strip mall unit from ThurKen III. Pham's reasons for doing so and his intentions in entering that agreement do not change the meaning of the agreement, although those reasons bolster the materiality of Tram Dang as the entity guaranteed.

17 Outlets has provided no evidence to raise a factual issue to contest the plain meaning of the guaranty agreement.[6] For example, 17 Outlets has not provided evidence that Pham knew Tram Dang operated her yogurt business through HFC or that he understood that HFC would be the tenant, despite the language of the guaranty.  Instead, 17 Outlets challenges Pham's credibility and asks the court to presume that Pham was aware of the business operations of HFC or would have guaranteed HFC, despite his affidavit to the contrary.  The court will not engage in the suggested speculation, which in any case would be insufficient to defeat the properly supported motion for summary judgment.

III.  <u>Summary</u>

Pham did not agree to guarantee HFC's obligations under the lease with ThurKen III, because no meeting of the minds occurred that HFC would be the lessee for purposes of the guaranty agreement.  Therefore, no guaranty agreement exists to cover HFC's lease obligations.

---

[6] The motion for summary judgment was filed on May 2, 2016, and 17 Outlets filed its objection on August 19, 2016, after being granted two extensions of time for the purpose of conducting additional discovery to respond to the motion.  To the extent 17 Outlets now suggests that it lacked an opportunity to challenge the credibility of Pham's statements in his affidavit due to a lack of discovery, the record does not support that complaint.

Although Pham did agree to guaranty Tram Dang's obligations under a lease with ThurKen III, no such lease was ever signed, and Tram Dang never incurred lease obligations. Because Tram Dang had no lease relationship with ThurKen III and did not sign the lease, the lease between HFC and ThurKen III did not modify a preexisting relationship between Tram Dang and ThurKen III. As a result, the lease did not substitute HFC for Tram Dang as the lessee for purposes of the guaranty agreement.

Therefore, based on the undisputed facts and the meaning of the guaranty agreement as a matter of law, Pham is not obligated to guaranty the obligations of HFC to ThurKen III under the lease. For that reason, Pham has not breached the guaranty agreement. Pham is entitled to summary judgment in his favor on 17 Outlets's claim of breach of personal guaranty against him.

## Conclusion

For the foregoing reasons, Tai H. Pham's motion for summary judgment (document no. 35) is granted. Count II of the complaint (document no. 1) is dismissed.

Summary judgment has been granted in favor of 17 Outlets on Count I of its complaint and in favor of Pham on Count II. Counts I and III of HFC's third-party complaint against ThurKen III and Richard Landry have been voluntarily dismissed, leaving only Count II, alleging fraudulent misrepresentation. 17

Outlets's claim against ThurKen III and Richard Landry for fraudulent misrepresentation also remains in the case.

    SO ORDERED.

                                      /s/ Joseph A. DiClerico, Jr.
                                      Joseph DiClerico, Jr.
                                        United States District Judge

September 16, 2016

cc: James F. Laboe, Esq.
     Christopher P. Mulligan, Esq.
     David K. Pinsonneault, Esq.
     Lisa Snow Wade, Esq.